on behalf of Mr. Marvin Smith. May it please the Court. The Court has brought in the COA to include whether trial counsel was ineffective at the plea and its sentencing, whether appellate counsel was ineffective on direct appeal, filing an Anders brief, and then whether the defendant was not. The time line here tells the story. November 3, 1998, the plea agreement is signed. It's signed by both defense counsel and by the client. Six days later, defense counsel files a motion joining in Blackman's motion to suppress six days later. But that's inconsistent. That's an action that's inconsistent. He signs it also six days later, November 9th. It's signed by defense counsel, and it's filed the same day, and it's personally served on Mr. Marvin's motion. Why is it inconsistent, given that the plea agreement relinquishes rights to all pending motions, and he knows that motion's pending, and yet he doesn't preserve it the same way that Blackman did? It's inconsistent because it shows that he's trying to preserve the defense's, Mr. Smith's suppression, a right to argue suppression and a right to suppress the cocaine that was seized. He's trying to do that when, six days later, he signed and advised, supposedly, his client, because the plea agreement says, and he signed it six days later, that you waive these Fourth Amendment rights. But you decided to waive them. I mean, why isn't it a strategic decision to get the plaintiff to do that? I think the real issue is what could the client, what could the defendant reasonably – what can we infer that the defendant would reasonably believe by this sequence of events? Because we don't have Mr. Smith's declaration. This Court, sua sponte, broadened to see a way to include whether trial counsel was ineffective at the plea. So the district court on the 2254 motion didn't even address it. This Court, sua sponte, broadened it. So we don't have a declaration of trial counsel. We don't have a declaration of defendant. But when looking at the timeline of events, what could a reasonable defendant – what can we infer a reasonable defendant would believe? Well, defendant signs November 3rd the plea agreement, purportedly, you know, waiving the Fourth Amendment rights. Six days later, his trial counsel is signing and filing and personally serving on the AUSA a motion to suppress a joinder in Blackman's motion. Okay. That looks like, hey, here we go. We've signed our plea. Now we're moving to suppress. Great. You know. And then on November 12th, three days later, he enters a plea. He's in court at the plea hearing, and they never discuss the pending motion. They never discuss the waiver of Fourth Amendment rights. They never discuss the fact that there was on calendar a pending motion filed three days earlier to suppress a joinder motion. Did he seek to withdraw the plea agreement? Pardon me? Did he seek to withdraw his plea? No, Your Honor. No, Your Honor. Why wouldn't he have done that? Why wouldn't he have done that? Well, what I'm saying is, from the defendant's standpoint, he's there in court on the 12th, and it looks like everything is fine. It's not like on the 12th the judge tells him, look, you know, the joinder motion your counsel filed three days earlier is gone. I mean, that's waived. The court never informed him. If you read it carefully, there's no – nothing in the colloquy between any of the parties or the court on the 12th that, one, we're taking this motion off calendar that you filed three days ago or that you're waiving these rights. Now, it is in the written plea agreement, but it's not there. So the question is, do we have a colorful claim? Because I think that really this probably has to go – what I'm first really asking is that this Court grant an evidentiary hearing. And the standard for that, remanded to the district court, because for an evidentiary hearing, because I believe we've shown a colorful – that we have a colorful claim of ineffective assistance of trial defense counsel. Let me ask you, counsel, what benefits did he gain from the plea agreement? He gained – well, he gained a reduced sentence, ultimately, and dismissal of some charges. But did that reduce the sentence that he would get? Ultimately, if he'd gone to trial and the government had convicted him of all these offenses – because I believe there was two offenses dismissed, if any, or three. So, yes, he could have ultimately received, I believe, life imprisonment, let's be clear. But in the sentence that he got, those could be considered as collateral problems for him, isn't that right, in the sentencing? I'm not quite following. Collateral problems? Well, the fact that it was dismissed didn't mean that the conduct didn't take place and that the court couldn't consider it in the sentencing, isn't that correct? The fact that the – The count one stuff that was dismissed would still be available to the sentencing judge in considering the sentence to be imposed. Well, no, ultimately, Blackman won in the Ninth Circuit, and this Court – The point that Judge Fletcher is making is one that she and I are both a little sensitive on, and that is that if the Supreme Court has said that you can be acquitted of charge and yet the sentencing can take into account that other conduct, even though there has been an acquittal of that, and so Judge Fletcher is wondering, as I am, that why couldn't that – why wouldn't that have been taken into account in sentencing? Well, our point is that had the – had the – had his defense counsel been able to preserve his motion to suppress, then – Well, that's a separate point. We're just giving you another lifeline. I'm not entirely following where the Court's going. But what, in fact, did the sentencing – did the sentencing court take into account the dismissed charges in sentencing your claim? Yes, it did, absolutely. Okay. That's the point. Yes, it did take into consideration the dismissed charges. And I think the other point I'd like to make, and we made in the brief, was that the United States attorney drafted the plea agreement, and the plea agreement says it has an integration clause that provides that it can't be modified except by a signed writing, and on Executive Record 41 says that it has to be a fully executed copy of this agreement. It has to be returned to the U.S. Attorney's Office by November 2nd, the day before it was signed, or it automatically – quote, automatically is withdrawn and thereafter of no legal force or effect. And I think that that really presents an interesting legal question, because we've got the government presenting the defendant with a plea agreement that says it is automatically – this plea agreement is automatically null and void if it's not returned by the November 2nd of 98. And, of course, it's signed up the next day, so it's not – it's not returned. However, the government honored it, and the defendant pled guilty, so I don't think that's a very strong point. Well, I beg to differ with all due respect, Your Honor, because I think what we have here is that you don't have the plea agreement. You go into the – you go into the sentencing hearing, and the terms of the – we're not seeking to void the plea – the guilty plea on the basis that the agreement is null and void. What I'm saying is that the agreement is null and void. Condition precedence was not met. You go into the hearing, and the terms of the plea agreement, then, are governed by what's put on the record at the hearing. And, of course, in exchange for dismissal of charges, we have an agreement on the sentence. But what we don't have is a waiver of Fourth Amendment rights at the hearing, and we don't have a waiver of appellate rights or – yeah, exactly – a waiver of appellate rights or a waiver of Fourth Amendment rights. So if we – if we look at the – if we take the plea agreement out, because it's null and void according to the government's own terms, and look and say, okay, the terms of the guilty plea, the terms of the plea agreement are then governed by the verbal, oral terms at the hearing on the 12th. When you review those, then you will say, okay, in exchange for the dismissal of counts, we have a 250-month sentence, but we don't have an appeal waiver because it's never mentioned, and we don't have a waiver of the suppression motion, the Fourth Amendment rights. And that leads us to the fact that we have a current at that time on the 12th, a pending motion to suppress joining in Blackman's. When that is ultimately denied by the district court, but then granted in a published – when the district court reverses the district court and suppresses that cocaine, we have a valid joinder. And it's interesting. If you look at the docket, the defendant's joinder motion was never taken off calendar. I mean, it was never taken off calendar, ever. It was an active – in fact, the entries – the entry on the docket shows that after the defendant pled guilty and Mr. Tremend – the AUSA here filed his opposition to the motion, the docket entry shows that it's in opposition to the motion that the defendants, including Defendant Smith's motion to suppress, which was way after the November 12th hearing. So on two different bases, both the fact that the plea agreement is null and void by its own terms, and therefore, we look to the terms of the hearing on the 12th to govern the guilty plea, and that those terms don't include a waiver of Fourth Amendment rights and don't include a waiver of appellate rights, we get to the fact that there still is a pending motion, a valid motion to suppress. And then when that is ultimately granted by this Court, the Ninth Circuit in a published decision, we don't have any basis to charge him, because all the charges were based upon the cocaine. All right. Thank you, counsel. Thank you very much. Good morning, Your Honors. I am Assistant U.S. Attorney Michael Terrell, appearing on behalf of the United States. With the Court's permission, I would like to address some of the points that defense counsel raised and also some of the points the Court raised. The charges against the defendant were set forth in count one and count two. The plea agreement specified that count one would be dismissed. As a practical matter, that didn't really impact the sentencing, because this case only involved two transactions. Defendant Smith was not involved in one of those. So even had he been convicted of the conspiracy charge, it would have been the same sentencing guideline range. That was my conclusion after looking at it, counsel. But the other point I wanted to make, Your Honor, was that the plea agreement also called for and the government did in fact dismiss the sentencing enhancement that was filed under Title 21 U.S.C. Section 851. What that did was lower the mandatory minimum sentence from 20 years to 10 years, and that gave the defendant a whole slew of options as far as what his potential sentence would be. He could then, you know, challenge the career offender predicate offenses. He could claim various types of downward departure motions, which he did. Ultimately, he didn't succeed, but he was given that option. So he potentially would have had a much lower sentence than had he gone to trial. Had he gone to trial and become a physician, he surely would have been convicted, as were all defendants who went to trial. His floor would have been a 20-year sentence. And the big carrot in the haystack is the dismissal of the 851 enhancement. And government's view is that at the change of plea proceeding, the counsel had to make a decision as to what he would advise the defendant. And again, I'm presuming he made this advice to the defendant since we don't have the declarations, whether or not to run the risk of a sure conviction at trial and what potentially would be a higher sentence, especially if you don't get acceptance or responsibility, and no better than a 20-year sentence, in the hope that this Court might, down the road, suppress the wiretap motion, which, as was noted in the government's brief, was not a certain amount of certainty, or whether or not he should have the certainty of a sentence that would be floored only at 10 years. So he had a potential much, much lower sentence with the plea agreement, with the acceptance of the plea agreement offer. Well, give me the figures on that. What would be the difference in sentence? Well, Your Honor, it's not so much the difference in the sentence. It's the potential difference, in that had he not accepted the plea agreement offer, had he gone to trial, his base offense level would have been the same. He may or may not have been eligible for acceptance or responsibility. Had he not been eligible, he would have gotten three extra points, which would have put him in a range of 360 months to life imprisonment. But also significantly, he would have been limited in his options as far as asking for downward departures from the Court, because the Court would have been stuck with a 20-year mandatory minimum and could not have given him anything less than that. By accepting the plea agreement offer, the floor fell from 20 years to 10 years, so that the arguments the defense counsel had, which I think were certainly non-frivolous, such as the over-representation of the criminal history, such as the validity of the old 1986 career-threatening or predicate offense, he had a chance to make those arguments. Had they succeeded, the sentence would have been far, far lower. Of course, he didn't know at the time that Judge Ray would not accept those arguments. But nonetheless, the potential for a far more reduced sentence was there. Would you explain how the difference in the mandatory minimum would have worked? Yes, Your Honor. Had he gone to trial and been convicted, he would have been convicted of both conspiracy count two, which one was conspiracy count two was the substantive count of the distribution of cocaine base. He would have also been subject to the sentencing enhancement under Section 851. That 851 enhancement would have changed his mandatory minimum sentence from 10 years to 20 years. Explain that. 851 why? 851 is an enhancement provision, which is also referred to under 841. Under 841, if there's a threshold amount of cocaine base involved, the mandatory minimum sentence is 10 years. That mandatory minimum can go to 20 years if there's a prior drug trafficking or drug-related offense that has become final. Would this be a prior or would it have been at the same time? No, no, it would have been a prior, Your Honor. There was a 1986 and a 1996 prior conviction. Now, the government only filed the enhancement as to one of them. The government could have filed as to both, which would have made it mandatory life, but that was never – that option was never pursued. What the government did do was file an 851 enhancement on the 1996 conviction, which doubled the mandatory minimum sentence as 841 and 851 are applied. So that really was the benefit to the acceptance of the plea we would offer. He could have potentially – Well, the thing that made the additional mandatory minimum was not anything that he was going to be convicted of at trial. Is that right? It's just – it's the prior? That is correct, Your Honor. Well, the prior was sitting there no matter what he was convicted of or applied to. That is correct, Your Honor. But the doubling of the mandatory minimum only comes into play if the government, prior to the change of plea, files an enhancement pursuant to 851. The enhancement is in the form of information. The government had filed that information. As part of the plea agreement, the government agreed to dismiss the information at the time of sentencing. I see. And the government did, in fact, dismiss the information at the time of sentencing. And so that's what – that's the mechanism that allowed the mandatory minimum sentence to go from 20 years back down to 10 years. Let me ask this, counsel. This suppression motion was kind of filed after the plea agreement was signed. Now – No. Defendant Blackman filed his suppression motion prior to signing the plea agreement. The plea agreement was signed and then a joiner by Defendant Smith was filed after the plea agreement was signed. That's right. But before the change of plea. It appears to the government that this was simply an insurance policy by the defense counsel just in case some unexpected complications arose at the change of plea hearing itself. Is it your position, then, that the suppression motion was inconsistent with the plea agreement and could not be pursued by the defendant? Once the change of plea itself occurred, then the suppression motion could not be pursued by Defendant Smith. But the mere sign of the plea agreement itself did not eliminate that right. Ordinarily, we see many cases where they plead guilty, but they do reserve the right to pursue the suppression motion. Now, would that have been granted by the government if requested by the defendant? It would not have, Your Honor. The government was not willing to enter into a conditional plea with any of the defendants in this case or any of the related cases. As the Court will recall from the Blattman case, the wiretap from Blattman was actually a spin-off wiretap from a previous one. So this was part of an investigation that involved multiple indictments and only four defendants. Yes, I'm pretty familiar with Blattman. Right. But the point was that there were more than just these four defendants involved in the investigation. The government early on took a position that there would be no conditional plea. Okay. Let me ask. This is why Blattman entered to stipulate the facts. Let me ask this. Was there significant evidence in that wiretap against this particular defendant? All the evidence against this particular defendant resulted from the wiretap. From the wiretap. Yes. Without the wiretap evidence, there would be no case against the defendant. Okay. Complicated case. The government didn't file a PFR on that case, which was interesting because it could very well have changed the result in Blattman. I'm aware of that, Your Honor, and that was a decision made above my head. And so it is obviously the law. Right. Unforeseen consequences. Right. And it does seem, I mean, I have to say, even though I don't really see any evidence of division performance by Smith's trial counsel, there is a sense that it is somewhat unfair that one co-defendant walks based on the suppression of the evidence stemming from the wiretap, and another co-defendant is serving substantial time. There's just sort of a sense that – I know it's 20-20 hindsight, but there's a sense that it's just unfairness. I understand that, Your Honor, but defendants always have to make choices between accepting plea agreement offers and trying to roll the dice, so to speak, at trial and maybe prevail on the appellate stage. And at the change of plea stage, the counsel here and Mr. Smith had to make a decision amongst their various options. And I don't think the record establishes that this was anything but a rational decision. The 20-20 hindsight, you know, maybe it wasn't the correct decision, but that doesn't make it a defective decision as that term is defined on the first prong of the Strickland test. All right. Thank you, counsel. We've let you go. I have one question. Opposing counsel says that the plea agreement itself is void by its own terms? Yes, Your Honor. I think the position of the defense takes the contract analogy a little bit too far. As the government pointed out in its answering brief, we're dealing with constitutional rights here, not strict contractual rights here. And we had a situation where the change of plea itself was made pursuant to the plea agreement. The Court had the plea agreement in its possession when it took the change of plea. References during the change of plea hearing were repeatedly made to the terms of the written plea agreement. In fact, the provision which contained the waiver of appellate rights was noted on the record at the change of plea hearing. And at the time I stood up and I told Judge Ray, as noted in paragraph 14, I believe, the Senate has waived its rights. And I actually read what that paragraph said. So everything was done pursuant to the plea agreement. Everything the government said it would do pursuant to the agreement, such as dismissing count one, such as dismissing the 851 information, everything was done pursuant to it. All the parties, defendant, government, the district court, did everything pursuant to the plea agreement in taking the change of plea and in doing the sentencing. And at this stage, to claim that after receiving the benefits of the plea agreement is actually null and void, I think, takes the contract analogy too far. All right. Thank you, counsel. I'm going to give Mr. Smith's counsel a couple extra minutes since you've gone over. Thank you. Thank you, Your Honor. I'd just like to make two points. First, the filing by defense counsel of the Joyner motion, six days after he waives a right to file such a motion or to pursue such a motion, gives rise to an inference, I believe, that this is an ineffective attempt to preserve this motion. And more importantly, is that that's what the defendant understood, and we can find out by remand of the district court that, geez, my counsel files six days. You know, then that's the thing. If he was faced with a difference between a 10-year mandatory minimum and a 20-year mandatory minimum, wouldn't that be a serious thing to be considering as to whether to accept the plea or not? Would that be a consideration? Yes. Wouldn't that be a serious consideration?  Absolutely.  No question about it. But at the same time, if the defendant understood that his counsel was trying to preserve and was preserving, although it was ineffective if the plea agreement is not void, if it's effective, if the defendant understood that that was preserved and he's at the hearing and it's never discussed, it's never taken off calendar, that's ineffective. His plea is rendered involuntary and unknowing because of ineffective assistance of trial counsel in making ineffective measures, taking ineffective measures to preserve that motion. That's all I'm saying. There's no question he benefited, had some benefit, but had benefit by the plea, by the plea deal. Yes. There's no question. I'm not too concerned about it. But what relief would you be wanting at this time? To, number one, withdraw the plea. Yes. Withdraw the plea on the basis that, one, the plea agreement itself is void. We don't have an adequate response in the brief cited by the United States attorney's office here. We do not have an adequate response. They cite one case by this Court that says you can't use, you know, contract principles to get out of a plea, when you enter the plea. We're not asking the Court to void the plea on the basis that the plea agreement is void. We're asking the Court to put aside the plea agreement, because by its own terms, drafted by the United States attorney, it is void. The plea, though, then, at that point, when he enters it, is still valid and is governed by the terms of the hearing, which do not contain a Fourth Amendment waiver, therefore, or appellate rights waiver. Therefore, he's not wait his then still pending motion to join in Blackman's motion is still valid. All right, counsel. You've gone over your extra time. Thank you. I think we understand your argument. Thank you very much. Thank you very much. And U.S. v. Smith will be submitted. The next case on the calendar, Maxwell v. Rowe, has been continued at the State of California's request. And we will take up Alvera.
judges: Hug, B. Fletcher, Wardlaw